

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-83,551-01

## EX PARTE JAMES EDWARD OWENS III, Applicant

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS
## CAUSE NO. 1069785-A IN THE 232ND DISTRICT COURT
## FROM HARRIS COUNTY

NEWELL, J., delivered the opinion of the Court, in which, KELLER, P.J., KEASLER, HERVEY, ALCALA, RICHARDSON, YEARY, and WALKER, J.J., joined. KEEL, J., did not participate.

### O P I N I O N

In this case, the misconduct by Jonathan Salvador–a former Texas DPS analyst–has, yet again, required us to consider falsity and materiality of the evidence tested to support a possession of a controlled substance charge. *See, e.g., Ex parte Barnaby*, 475 S.W.3d 316 (Tex. Crim. App. 2015). In this case, the State initially agreed that relief should be granted based upon *Ex parte Coty*, 418 S.W.3d 597 (Tex. Crim. App.

2014). The trial court did not. The trial court rejected the State and Applicant's proposed findings and recommends to this Court that relief be denied.[1] Based on an independent review of the record, we agree with the habeas court and deny relief.

## Applicant's Arrest

On May 21, 2006, Officers Shane Granelli and Orlando Jacobs, troopers from the Texas Department of Public Safety, pulled over a vehicle after the driver impeded traffic and made an unsafe lane change. After approaching the car, Officer Granelli noticed the nervous behavior of both the driver, Amanda Reid, as well as Applicant and another passenger. Officer Granelli also smelled a strong odor of burnt marihuana inside the vehicle. Based on these observations, as well as the conflicting stories given to him by Reid, Applicant and the other passenger, Officer Granelli conducted a search of the vehicle, including the trunk. Inside the trunk in a speaker box, Officer Granelli recovered three pounds of marihuana as well as a pistol.[2] Applicant admitted to Officer Granelli that the marihuana was his and that he had paid $1,000 for it.

---

[1] The State now asserts that Applicant cannot meet his burden under either the falsity or materiality prong of our analysis. We address these arguments below.

[2] The marihuana was weighed by Officer Granelli at the DPS office after the arrest of Applicant and before turning the substance over to the DPS crime lab for analysis.

## Lab Tests

Jonathan Salvador worked as a laboratory technician at the Houston Police Department's Crime Lab Division from 2006 to 2012. On January 26, 2012, DPS laboratory technician Andrew Gardiner discovered that Salvador had used a gas chromatograph-mass spectrometer (GC-MS) test result in one alprazolam case to support a finding of alprazolam in another case. Thereafter, Gardiner reported his findings to the Texas Rangers and the Office of Inspector General, which then proceeded to conduct an extensive investigation into the cases handled by Salvador during his six-year tenure.

The Texas Forensic Science Commission ("TFSC") published a full report in January 2013 detailing the problems that Salvador had throughout his employment with DPS. The problems included:

(1)　failing to maintain adequate case output;

(2)　having more than 1 in 3 of his case folders returned for corrections; usually administrative in nature;

(3)　receiving evaluations instructing him to "avoid short cuts;" and

(4)　requiring remedial training as well as coaching and counseling.

Additionally, investigation revealed two instances where Salvador had used the test results from one case to justify the results in another case,

otherwise known as "dry-labbing." The first instance occurred in April 2009 when Salvador was tasked with testing a cocaine sample. A re-analysis of the drug exhibit indicated that, while it did contain cocaine, there was a difference in quantity and type of adulterants between the two exhibits. *Ex Parte Coty*, 418 S.W.3d 597, 598 n. 2 (Tex. Crim. App. 2014). The second incident was the misconduct involving alprazolam that was discovered by Gardiner in 2012.

The investigation also uncovered that there were two cases in which Salvador had made errors in the testing of substances involving marihuana, though those errors did not involve dry-labbing. Several progress reports on Salvador's work indicated that Salvador's tenure at DPS began with testing and reporting on marihuana substances. In a number of these reports, all dated in 2006, Salvador's superiors state that some of the improvements he can make are to "[c]omplete examination of drugs other than marihuana" and "[b]egin extraction and analysis techniques for drugs other than marihuana."

The Rangers reported their findings to the Harris County District Attorney's office. On May 5, 2012, the Harris County District Attorney's office presented the case to a Harris County grand jury seeking criminal charges of tampering with governmental records. The grand jury

returned a no-bill. The DPS Office of Inspector General issued a report concluding that Salvador failed to properly follow laboratory protocols and procedures, misidentified substances, and dry-labbed samples. In June of 2012, after receiving the Inspector General's report, Salvador was terminated from his position at the Houston Police Department's Crime Lab Division.

## Applicant's Case

The marihuana recovered from the trunk of the vehicle was submitted for testing to the DPS-Houston crime laboratory on June 27, 2006 and Salvador performed an analysis on the drugs on July 26, 2006. Applicant was later indicted in the 232nd District Court of Harris County, Texas, for possession of marihuana between four ounces and five pounds, a state jail felony carrying a sentence of 180 days to two years incarceration. TEX. HEALTH & SAFETY CODE § 481.121(a),(b)(3); TEX. PEN. CODE § 12.35(a). On November 10, 2006, Applicant pleaded guilty to the charge. Pursuant to a plea agreement with the State, Applicant waived his right of appeal and was sentenced to two years community supervision.

Two months later, Applicant was arrested in North Carolina and charged with possession with intent to sell and deliver a controlled

substance - marihuana - in violation of the North Carolina Controlled Substances Act. Upon learning of this offense, the Harris County District Attorney's office filed a motion to adjudicate guilt alleging that Applicant had violated the terms of his community supervision by committing an offense against the laws of another State. Applicant pleaded "true" to the allegation and, on November 4, 2009, his community supervision was revoked and he was sentenced to 180 days in state jail. The marihuana tested by Salvador was destroyed in July 2008.

After Salvador's transgressions came to light in 2013, Applicant filed this application alleging that his sentence should be overturned because his plea of guilty was made involuntarily and unknowingly. Specifically, Applicant claims that Salvador's misconduct creates an inference that the testing of the marihuana in his case resulted in false evidence and that, without that false evidence, he would not have pled guilty to the possession charge. Although Applicant has completed his sentence, he is currently facing several controlled dangerous substance charges in Maryland. Because this conviction is being used for enhancement purposes in those cases, this habeas application is properly before this Court. After a hearing was held, the habeas court filed findings of facts and conclusions of law and recommended that relief be denied.

## Standard of Review

The trial judge on habeas is the "original fact-finder." *Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008). The role of the trial judge on habeas is to collect evidence, organize materials, decide what live testimony is necessary, resolve disputed fact issues, enter specific findings of fact and conclusions of law and make a specific recommendation to grant or deny relief. *Ex parte Simpson*, 136 S.W.3d 660, 668 (Tex. Crim. App. 2004). Because the trial judge is in the best position to assess the credibility of witnesses, in most circumstances, we defer to and accept a trial judge's findings of fact and conclusions of law when they are supported by the record. *Reed*, 271 S.W.3d at 727. However, this Court is the "ultimate fact-finder." *Ex parte Navarijo*, 433 S.W.3d 558, 567 (Tex. Crim. App. 2014). When our independent review of the record reveals that the trial judge's findings and conclusions are not supported by the record, we may exercise our authority to make contrary or alternative findings and conclusions. *Ex parte Flores*, 387 S.W.3d 626, 634, 635 n. 40 (Tex. Crim. App. 2012).

## The Salvador Cases

Originally, after Salvador's misconduct came to light, this Court granted relief in several cases on the basis that Salvador was the lab

technician who was solely responsible for testing the evidence. We granted relief in cases where evidence still existed that could be retested as well as in those cases where the evidence had been destroyed and could not be retested. *Ex parte Turner*, 394 S.W.3d 513, 514 (Tex. Crim. App. 2013) (per curiam); *Ex parte Hobbs*, 393 S.W.3d 780 (Tex. Crim. App. 2013) (per curiam); *Ex parte Smith*, No. AP–76,988, 2013 WL 831359, at *1 (Tex. Crim. App. Mar. 6, 2013) (per curiam) (not designated for publication); *Ex parte Hinson*, No. AP–76,983, 2013 WL 831183, at *1 (Tex. Crim. App. Mar. 6, 2013) (per curiam) (not designated for publication). These "Salvador cases" all shared a common finding by this Court that there had been a presumptive due-process violation in each case in which Salvador was the laboratory technician.

But, in *Ex Parte Coty*, 418 S.W.3d 597 (Tex. Crim. App. 2014), we re-evaluated whether there should be a presumptive due-process violation in cases in which Salvador had performed drug testing. We analogized the claims regarding Salvador's misconduct to false-evidence claims and determined that a better analysis of these cases would require a showing of both falsity and materiality. We announced, in *Coty*, a five-factor test to be used when an applicant raises an inference of falsity. *Id*. at 605. We held that, if an applicant can satisfy his initial burden to raise

an inference of falsity, the burden shifts to the State to offer evidence demonstrating that the laboratory technician in question committed no such misconduct in that applicant's case. *Id*.

If the State fails to meet that burden, the applicant is still required to prove that the false evidence was material to his or her conviction. *Id*. In *Ex Parte Barnaby*, we stated that the proper way to make this showing was to examine materiality "in a manner similar to that used to the analysis of the materiality of ineffective assistance of counsel to a decision to plead guilty." 475 S.W.3d at 324. As a result, we held that, in the context of these Salvador cases, "the materiality of false evidence is measured by what impact that false evidence had on the defendant's decision to plead guilty." *Id*. at 325. When gauging that impact, the proper inquiry is "Would the defendant, knowing of the falsity of the evidence, still have plead guilty or would he have insisted on going to trial?" *Id.* If he would have chosen to go to trial, the false evidence was material. *Id*. at 326.

## Falsity

In order to meet his first burden, Applicant must demonstrate the evidence's falsity through the use of *Coty*'s five-factor test. These factors include:

> (1) the technician in question is a state actor, (2) the technician has committed multiple instances of intentional misconduct in another case or cases, (3) the technician is the same technician that worked on the applicant's case, (4) the misconduct is the type of misconduct that would have affected the evidence in the applicant's case, and (5) the technician handled and processed the evidence in the applicant's case within roughly the same period of time as the other misconduct.

*Coty*, 418 S.W.3d at 605. In making this showing, Applicant is required to "establish the extent of the pattern of misconduct the technician is accused of." *Id*.

The habeas court made findings of fact and conclusions of law regarding Applicant's ability to raise an inference of falsity. Although the habeas court found that Applicant had met the first three factors given Salvador's handling of the evidence in this case, the habeas court ultimately determined that the fourth and fifth factors could not be shown. As to the fourth factor, the habeas court found that Applicant had not directly cited to a pattern of misconduct and inferred from the pleadings that he meant to rely on the 2009 and 2012 dry-labbing incidents.

Given that the trial court's findings of fact are based on evidence of the record, we defer and agree with its findings that falsity has not been shown. *See Reed*, 271 S.W.3d at 727. Although the first three *Coty*

factors can be met, the problems lie with the fourth and fifth factors. In terms of the fourth factor, we agree with the trial court that Salvador's misconduct in dry-labbing alprazolam and cocaine is not of the type "that would have affected the evidence in applicant's case[.]" *Coty*, 418 S.W.3d at 605. Salvador tested the cocaine in 2009 and alprazolam in 2012 by using a Gas Chromotograph Mass Spectrometer ("GCMS") confirmatory test*. Id.* at 601.

In contrast, the record establishes that in this case, the marihuana, a plant material, is subjected to weighing, and microscopic examination of unique plant features, and a chemical color test. Thus, testing marihuana versus testing cocaine and alprazolam involve starkly different methods. Moreover, early on in his work at DPS, Salvador tested only marihuana, so much so that reviews by his superiors urged him to start learning how to test controlled substances other than marihuana. One can infer from these reports that, not only were the substances tested differently, but also Salvador had much more experience performing the tests that pertain to marihuana than those tests for substances such as cocaine or alprazolam.

Applicant urges us to disregard the habeas court's findings on the basis that it focused on the nature of the testing rather than, what

Applicant asserts is, the true nature of Salvador's misconduct - "the misrepresentation of data to support his lab reports." The problem is, however, that the only evidence in the record of a misrepresentation of data comes from the 2009 cocaine and 2012 alprazolam testing. Although there were two incidents of misconduct by Salvador in 2011 that involved marihuana, neither was an instance in which Salvador intentionally misrepresented data. *See Coty*, 418 S.W.3d at 605, n. 11 (noting that we consider the "intentional laboratory misconduct" of the technician).

In the first instance, Salvador tested a substance found in a pipe and issued a report that the substance was THC. Retesting by another chemist revealed that the substance was actually marihuana and an affidavit from that chemist's supervisor contained in the record notes that Salvador did not make the proper finding because he failed to "exert enough effort to obtain the plant material" from the pipe. In the second instance, Salvador mistakenly reported that a substance he had analyzed was marihuana when, in fact, further testing by another chemist revealed that it was not. This was an "unexplainable" result according to the assessment of the chemist who had helped in the retesting. Because nothing in the record before us suggests that these two instances were

anything other than the result of carelessness or general incompetence, this is not the type of intentional misconduct that gives rise to a presumption of falsity under *Coty*. Thus, when Applicant asks us to consider Salvador's overall pattern of misrepresenting data, we are left where we started: only the 2009 and 2011 intentional incidents of dry-labbing are relevant to our analysis.

Even if the two instances of mis-identifying marihuana satisfied the fourth *Coty* factor, we still have a fifth factor to consider. Salvador's misrepresentation of data, including, for the sake of argument, those instances involving marihuana, occurred three or more years after the testing done in this case. In his brief, Applicant does not point us to any misconduct involving the intentional misrepresentation of data that occurred closer to 2006, when Salvador was testing the evidence in Applicant's case. Applicant has failed to show that Salvador "handled and processed the evidence in the applicant's case within roughly the same period of time as the other misconduct." *Coty*, 418 S.W.3d at 605.

## Materiality

Even if we were to assume that Applicant has demonstrated falsity,

he nevertheless fails to show that the evidence was material.[3] To prove materiality, Applicant has the burden of showing that the value of knowing the falsity of the laboratory report outweighed the benefit of accepting the plea offer. *Barnaby*, 475 S.W.3d at 326. Because neither Applicant nor our own independent review of the record reveals that the alleged false evidence was material to Applicant's decision to plead guilty, we agree with the habeas court's findings of fact and conclusion of law that Applicant has not met his burden.

The evidence on the record shows that Applicant's guilty plea was minimally, if at all, impacted by the results of Salvador's lab testing. There was evidence, other than Salvador's analysis, that was at the State's disposal to prove that the bundles recovered from the vehicle were marihuana weighing four ounces to five pounds. Troopers Granelli and Jacobs, who conducted the traffic stop, submitted affidavits as to their training and observations at the time surrounding Applicant's arrest. Both troopers were able to readily identify the look, feel and smell of the marihuana that was recovered from the trunk of the vehicle. Based on

---

[3] As addressed above, marihuana and cocaine have different methods for testing. They are also substantially different in terms of how easily identifiable they are without the help of drug analysis testing. For these reasons, we find the following discussion necessary to our jurisprudence and any future cases called into question as a result of Salvador's misconduct.

their experience at the time of the traffic stop, it is reasonable to believe they would have been able to testify that the substance found was marihuana.[4]

Of course, the officers need not have been experts in identifying marihuana to testify that the substance found was marihuana. *See Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002). Marihuana, unlike the cocaine found in *Barnaby*, is easily identifiable; "it does not take an expert to identify the smell of marihuana smoke." *Id.* In fact, the odor or sight of marihuana requires limited, if any, expertise to identify. *See, e.g., Kemner v. State*, 589 S.W.2d 403, 407 (Tex. Crim. App. 1979) (airline employee recognized odor of marihuana emanating from appellant's suitcase and informed DEA); *Chaires v. State*, 480 S.W.2d 196, 197 (Tex. Crim. App. 1972) (airline baggage agent smelled odor of marihuana in appellant's suitcase, opened the suitcase and identified the grassy substance it contained as marihuana); *Sorensen v. State*, 478 S.W.2d 532, 533 (Tex. Crim. App. 1972) (appellant's mother testified that she recognized the odor of marihuana when she found it in

---

[4] At the time of the traffic stop, Trooper Granelli had made multiple arrests and convictions for possession of marihuana and was also trained by the Texas Department of Public Safety on the look, feel, and smell of marihuana. Trooper Jacobs had made multiple arrests involving marihuana, and attended several schools that trained on identifying marihuana including the Federal Bureau Investigations, Drug Enforcement Agency and EPIC/DIAP Programs.

her son's room); *Mumphrey v. State*, 774 S.W.2d 75, 77 (Tex. App.-Beaumont 1989, pet. ref'd) (13-year-old rape victim testified that she smelled the odor of marihuana on appellant's clothes). While cocaine or pills take additional efforts and experience to identify, marihuana is a substance that both officers and the common lay witness can identify through simple use of his senses. Thus, not only could Troopers Granelli and Jacobs have testified as to what the recovered substance was, their testimony would have been sufficient for the State to prove that the substance Applicant had possessed was marihuana. *See, e.g., Deshong v. State*, 625 S.W.2d 327, 329-30 (Tex. Crim. App. 1981) (testimony of police officer was sufficient to prove that the substance within the defendant's car was marijuana.)

In addition to two troopers that could have readily identified the substance found in Applicant's possession, there are other indications that Applicant's decision to plead guilty was not based on the results of the lab work. Without a plea, Applicant was facing incarceration of at least 180 days and up to two years. TEX. PEN. CODE § 12.35(a). In exchange for his plea, however, he received deferred adjudication. We find this benefit that Applicant received a compelling one. *See Barnaby*, 475 S.W.3d at 326 ("applicant's assertion that he would not have plead guilty had he

known of the falsity of the laboratory report is unpersuasive in light of the benefit he received from the plea bargain"). There is no indication that Applicant turned down plea offers from the State while awaiting the lab results and the fact that a plea agreement was not reached until three months after the lab results came in further suggests they were of low importance to Applicant.

Moreover, when faced with the decision to plead guilty, Applicant was also aware that, in addition to the aforementioned testimony that the two troopers at the scene of the arrest would be able to provide, the State could present evidence that Applicant had told the Trooper Granelli at the scene that the substance was marihuana, that the marihuana was his, and that he had paid $1,000 for it. Applicant hid the marihuana in a speaker box with his gun and tried to take it across the country.

Applicant posits that, without the lab report, he would have been guilty of attempted possession of marihuana, a class A misdemeanor, at the most. But, possession of marihuana in a particular quantity need not be proven solely through the use of lab analysis. *See, e.g., Marroquin v. State*, 746 S.W.2d 747, 748-50 (Tex. Crim. App. 1988) (State sustained its burden of proving possession of marihuana over 50 pounds where officers, who testified at trial, weighed the recovered marihuana at the

time of the arrest and at the police station and a photograph of the bags and their contents were introduced into evidence before the jury); *Osbourn*, 92 S.W.3d at 539. The testimony of the officers, the admissions by Applicant and the fact that Trooper Granelli personally weighed the recovered marihuana at three pounds demonstrate that the State had more than enough evidence to convict Applicant under TEX. HEALTH & SAFETY CODE § 481.121(a),(b)(3) even without the help of lab results.[5]

## Conclusion

Based on the evidence in the record, we conclude that Applicant failed to present sufficient evidence to warrant a presumption of falsity regarding Salvador's lab testing in this case. Even if we assume a presumption of falsity, Applicant has failed to demonstrate that test results would have been material in this case. *Barnaby*, 475 S.W.3d at 325. Thus, we agree with the habeas court that Applicant has not met his burden of showing either falsity or materiality. We deny relief.

Filed: March 22, 2017

---

[5] Applicant also asserts that the admissions could not have been relied upon at trial because they were made under custodial interrogation and would have been suppressed. Applicant does not point us to any place in the record that indicates defense counsel filed or intended to file a motion to suppress his statements to police and we cannot speculate that a motion to suppress would have succeeded, especially given that the offense report indicates that Applicant made the statements after being read his *Miranda* rights.

Publish