

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-84,073-01

## EX PARTE MARTIN PENA, Applicant

## ON APPLICATION FOR WRIT OF HABEAS CORPUS
## IN CAUSE NO. 1379020-A IN THE 184TH DISTRICT COURT
## OF HARRIS COUNTY

**NEWELL, J., filed a concurring opinion**.

What makes this case so difficult is the nature and degree of the misconduct engaged in by Marcos Carrion, one of the arresting officers in the case. At the time he arrested Applicant, Carrion was a "dirty" cop on the payroll for drug traffickers. And, proving there is no honor among thieves (or drug traffickers as the case may be), Carrion was also stealing from his employer (the drug traffickers not the police) by taking cocaine before it was delivered to a courier and replacing it with sheetrock and

trace amounts of cocaine. Then, Carrion would provide cover for himself with the drug traffickers by arresting the courier with the fake drugs for possession of the full amount in order to make the drug traffickers think the real drugs had been seized. To be clear, Carrion manufactured evidence. In this case. Against this defendant. As the Court rightly notes, "Carrion's misconduct was willful, brazen, and appalling."

Yet, I ultimately agree with the Court that Applicant is not entitled to relief because Applicant tried to possess evidence that was even more damning than the evidence Carrion manufactured. I do not wholly join the Court's opinion because it decides a number of issues left open in other cases without explaining why. But I also cannot join the dissents because I do not believe Applicant is entitled to relief under the rationales provided in those opinions. Ultimately, I concur in the result.

## Part I: The Part of My Opinion
## Where I Disagree with the Majority

In *Ex parte Palmberg*, we left open the possibility that we could, under our own false-evidence jurisprudence, grant relief where false evidence might undermine the integrity of the plea bargain process 491 S.W.3d 804, 812 (Tex. Crim. App. 2016). As we noted, "It is unclear to what extent a defendant, at least so far as the United States Constitution

is concerned, is afforded protection on the basis of fairness in the pre-trial phase of a prosecution." *Id.* at 813. And we explained that, "Obviously, states are free, through their own constitutions or statutes, to provide greater protection for defendants in the pre-trial phase of prosecution." *Id.* at 813 n. 17 (citing *Heitman v. State*, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991)). As an example, we suggested that intentionally misrepresenting information to induce a plea would be "unfair" and would render the plea involuntary. *Id*.

Nevertheless, we rejected the application of a false-evidence theory in *Palmberg* because there was no indication that the State had used false or misleading evidence, knowing or otherwise. *Id.* at 814. In that case, the defendant pleaded guilty to possession of what he believed to be cocaine "[k]nowing exactly as much as the State did–that there was a substance found during the search incident to arrest that may or may not be subject to later testing in a forensic laboratory." *Id.* Even though later testing established that the substance collected had been used up by the field tests, pleading the defendant out before disclosing that fact to him did not "impugn the fairness or integrity of the process[.]" *Id.* So, while we seemed to have acknowledged that we might, under the right circumstances, grant relief where the fairness of the plea bargain process

was compromised by intentional misrepresentations, *Palmberg* was not the case or the circumstances in which to do that.

Carrion's misconduct and misrepresentations in this case, however, were intentional not inadvertent.  We suggested in *Palmberg* that whether a plea bargain is voluntary and whether the plea-bargain process was fair are two separate, but intertwined inquiries.  *Id.* at 812-13 ("Admittedly, whether the plea was voluntary and whether the plea-bargain process was fair can involve overlapping considerations.").  And we allowed that "the State going so far as to misrepresent information to induce a plea would be unfair."  *Id.* at 813.  But we never clarified what that means.

The United States Supreme Court has acknowledged that a guilty plea may be involuntary if it is induced by misrepresentations.  *Brady v. United States*, 397 U.S. 742, 755 (1970).  The Fourth Circuit has relied upon this language to hold that an affirmative government misrepresentation that strikes at the integrity of the prosecution as a whole can result in an involuntary plea even where the misrepresentation comes from  a law enforcement officer.  *United States v. Fisher*, 711 F.3d 460, 466 (4th Cir. 2013); *see also Ferrara v. United States*, 456 F.3d 278, 291 (1st Cir. 2006) ("Under limited circumstances, however–everything depends on context-the prosecution's failure to

disclose evidence may be sufficiently outrageous to constitute the sort of impermissible conduct that is needed to ground a challenge to the validity of a guilty plea."). With today's decision, we seem to hold an Applicant is only entitled to relief from a plea bargain upon an intentional misrepresentation claim if that intentional misrepresentation comes from the line prosecutor rather than a member of the prosecution team such as an arresting officer. We do not address whether an intentional misrepresentation, unknown by the prosecutor at the time of the plea, by an officer, might render the plea-bargaining process unfair similar to the situation presented in *Fisher*. In this way, we seem to limit *Palmberg* without explaining why. To that extent, I cannot join the Court's opinion.

Moreover, the Court's "favorable evidence" analysis appears to apply the definition of materiality associated with the late disclosure of *Brady* evidence. By that I mean, the Court looks, in this case, to whether there is a reasonable probability that the outcome of the trial would have been different had the prosecutor made a timely disclosure. *See Pena v. State*, 353 S.W.3d 797, 812 (Tex. Crim. App. 2011). I do not mean to suggest that the Court applies a legal sufficiency analysis. The *Brady* materiality standard is not that. *Id.* Rather, the Court spells out very persuasively that any effort Applicant might have engaged in would

have been fruitless as he still would have been found guilty had he gone to trial.

We held in *Ex parte Barnaby* that our standard for materiality is different when we are considering a claim that a plea is rendered involuntary by the failure to disclose false evidence. 475 S.W.3d 316, 325 (Tex. Crim. App. 2015). To show materiality in that context we ask whether there is a reasonable likelihood that the false evidence affected the defendant's decision to plead guilty, not whether it affected the conviction or sentence. *Id.* By way of comparison, we found the false evidence in *Barnaby* immaterial because the record showed that the applicant had gotten a good deal by pleading guilty, supporting the conclusion that there was no reasonable likelihood that his decision to plead guilty would have been affected by the false lab test results in question. *Id.* at 326. While we did rely upon significant evidence of guilt in our recent case *Ex parte Owens* to uphold the voluntariness of a plea, we also noted evidence that the applicant had received a favorable plea offer and that there was also no evidence that he was waiting on lab testing to make up his mind. 515 S.W.3d 891, 899 (Tex. Crim. App. 2017).

In this case, the Court's primary focus seems to be on whether

Applicant would still be found guilty had he gone to trial. The Court does not consider whether the misinformation could have affected Applicant's decision to enter into the plea bargain.[1] In this sense, the Court's decision undermines the *Barnaby* materiality-to-the-decision-to-plea standard in favor of the *Brady* materiality-to-the-outcome-of-trial standard.

Further, the Court specifically recognizes the distinction between exculpatory and impeachment evidence under *Brady*, and characterizes the evidence at issue as impeachment evidence. But the Court does not consider whether the impeachment evidence might have affected Applicant's decision to plead guilty other than to explain why he still would have been found guilty however he tried to use the impeachment evidence. As mentioned above, even if the impeachment evidence at issue in this case would not undermine Applicant's challenge to his conviction, it could at least have played a role in whether to agree to a

---

[1] The Court does note that Applicant avoided the risk of getting the maximum sentence in his case by pleading guilty to the statutory minimum, but that's pretty weak sauce. A plea to the statutory minimum shows that Applicant got a benefit for his bargain, but the Court still doesn't attempt to weigh the value of the false evidence against the benefit Applicant received. *Barnaby*, 475 S.W.3d at 326. The Court apparently believes that impeachment evidence in this case has no value because only "exculpatory" evidence would have any effect on the ultimate outcome of the case. In that manner, the Court's analysis is still only focused upon the ultimate outcome of the case, not Applicant's decision-making process.

particular sentence. In this way, the Court appears to conclude that the evidence in this case is not material simply because it is not "exculpatory." I do not join this aspect of the opinion.

**Part II: The Part of My Opinion
Where I Disagree with the Dissents**

But on the other hand, the distinction between "exculpatory" and "impeachment" evidence helps bring *Palmberg* into sharper focus. In *Ex parte Mable*, the lab test provided affirmative evidence that the defendant did not possess any drugs, providing the applicant with exculpatory evidence regarding the charged offense. 443 S.W.3d 129, 130 (Tex. Crim. App. 2014). In *Palmberg*, the revelation that there were no drugs left to test provided evidence suitable to impeach the arresting officer, but not affirmative evidence exculpating the applicant. 491 S.W.3d at 815. And though we did not consider the materiality of "false" evidence in *Palmberg*, had we done so any possible impeachment value of the evidence in that case was considerably lower than the impeachment value of the evidence at issue in this case.[2] To be sure, discerning where

---

[2] I refer to the evidence at issue in *Palmberg* as "false" evidence only for ease of discussion of the relevant legal concepts. We did not determine the evidence at issue in *Palmberg* to be false, and that is why we never considered the materiality of that evidence. 491 S.W.3d at 811 ("Applicant has presented no evidence suggesting that the facts of this case were not exactly what all the parties involved in the case believed them to be at the time he entered his plea.").

impeachment evidence ends and exculpatory evidence begins is a difficult task, but as the United States Supreme Court seems to recognize this distinction, I see no problem with this Court recognizing it as well.[3]

And I do agree with the Court that Article 38.23 would not require the suppression of the evidence. As the Court rightly explains, to show that Carrion tampered with or fabricated the drugs seized from the car, Applicant needs to show that Carrion knew an investigation or official proceeding was pending or in progress and that he made, presented, or used the seized cocaine with knowledge of its falsity and with intent to affect the course of the outcome of the investigation or official proceeding. TEX. PENAL CODE § 37.09(a)(2); *Wilson v. State*, 311 S.W.3d 452, 464 (Tex. Crim. App. 2010). Under the unique facts of this case, I think the evidence shows that Carrion knew an investigation was pending because his entire plan depended upon it.

"Pending" in the tampering statute means "impending, or about to take place," a definition consistent with the Model Penal Code. *See Lumpkin v. State*, 129 S.W.3d 659, 663 (Tex. App. Houston [1st Dist.]

---

[3] Of course, this Court's opinion in *Ex parte Broussard* may have rendered the distinction between exculpatory evidence and impeaching evidence a distinction without a difference. 517 S.W.3d 814, 825 (Tex. Crim. App. 2017)(Newell, J., concurring in denial of rehearing) (suggesting that *Broussard*'s expansion of *Palmberg* has implicitly overruled *Ex parte Mable*, 443 S.W.3d 129 (Tex. Crim. App. 2014)).

2004, pet. ref'd.); *see also Thurston v. State*, 465 S.W.3d 255, 256 (Tex. Crim. App. 2015) (Keller, P.J., concurring). We can take it as a certainty that there was an investigation pending at the time Carrion engaged in misconduct in this case because Carrion controlled when the investigation would commence. Moreover, Carrion needed the investigation to take place, and quickly, so that he could use the criminal justice system to essentially launder the cocaine he stole from his employer (again, the drug traffickers not the police). However, it is debatable that Carrion actually acted "with intent to affect the course or outcome of the investigation" as his plan to cover his tracks also required an intent that the investigation proceed exactly as it would have if he had not altered the package of cocaine in question.

Yet, even if we assume that Carrion manufactured evidence in violation of the tampering statute, the Court correctly notes that we have previously interpreted the word "obtained" in Article 38.23 to require a showing that illegality follow the crime under investigation rather than precede it. *Martinez v. State*, 91 S.W.3d 331, 340 (Tex. Crim. App. 2002). A situation where a dirty cop plants evidence upon a defendant after an arrest would fall under this understanding of Article 38.23. But while Carrion undisputedly manufactured evidence (and at least arguably

did so in violation of the tampering statute), Applicant still took possession of the package with the intent that he possess the exact quantity of cocaine he was charged with possessing. His argument is not that he never possessed drugs, it's that the drugs he intended to possess had been severely "stepped on" by the cops. So I agree with the Court that Applicant would not have had a legal basis for the suppression of his evidence.

For similar reasons, I agree that Applicant would not have been entitled to a lesser-included-offense instruction for possession of a lesser amount of cocaine. A defendant is not entitled to a jury instruction on a lesser-included offense unless there is some scintilla of evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense. *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). In *Cawthon v. State*, we held that to include an adulterant or dilutant in the aggregate weight of a controlled substance, the State must prove four elements: (1) the identity of the named illegal substance, (2) that the added remainder (adulterants or dilutants) has not affected the chemical activity of the named illegal substance, (3) that the remainder (adulterants or dilutants) was added to the named illegal substance with the intent to increase the bulk or

quantity of the final product, and (4) the weight of the illegal substance, including any adulterants or dilutants. 849 S.W.2d 346, 349 (Tex. Crim. App. 1992).

But after we issued *Cawthon*, the legislature amended the Controlled Substances Act to provide a specific, and very broad definition of "adulterants and dilutants." *Seals v. State*, 187 S.W.3d 417, 420 (Tex. Crim. App. 2005). As we observed in *Seals*, the legislature specifically intended to abolish any limits on what substances are to be considered adulterants or dilutants. *Id.* Under this new definition, the State no longer has to prove the amount of controlled substance and the amount of adulterants and dilutants that makes up a mixture of a controlled substance. *Id*. The State need only prove that the aggregate weight of the controlled substance mixture equals the alleged minimum weight under the statute. *Melton v. State*, 120 S.W.3d 339, 344 (Tex. Crim. App. 2003)*.*

Under this definition, we have held that the defendant's blood found in a vial of methamphetamine was an "adulterant or dilutant" even though it was not used in the manufacture or transportation of the drug in question. *Seals*, 187 S.W.3d at 422*.* We have even held that pouring liquid methamphetamine into a bottle of bleach in an attempt to destroy

the drugs resulted in the bleach becoming an "adulterant or dilutant." *Jones v. State*, 235 S.W.3d 783, 786 (Tex. Crim. App. 2007). As we noted in *Jones*, the bleach was an adulterant or dilutant "[r]egardless of when, how, or why it was added[.]" *Id.* If bleach or blood is an adulterant or dilutant, then so is sheet rock regardless of when, how, or why it was added.

Proof that the cocaine in this case was not nearly as pure as Applicant originally thought when he took possession of it would not have provided a valid, rational alternative to possession of at least 400 grams of cocaine with intent to deliver. The Court is right that a jury finding that Applicant possessed less than the aggregate weight of the mixture could only be arrived at if the jury intentionally disregarded the law applicable to the case. Consequently, I agree with the Court that the evidence of Carrion's misconduct was not "exculpatory" and that it would not have entitled Applicant to a jury instruction on a lesser-included offense for possession of a lesser amount of cocaine.

## Part III: The Part of My Opinion Where I Throw Up My Hands

So there appears to be a pox on both houses. On the one hand there is a palpable sense of injustice from allowing a conviction to stand

when it is infected by such misconduct from a member of law enforcement. But the legal value of the false evidence in this case lay in its ability to undercut the credibility of an officer who did not testify rather than negate any element of the offense. On the other hand, the applicable legal standards do not seem to account for the very real-world impact that finding out about systemic, invasive misconduct on the part of a member of the prosecution team might have upon a defendant's decision to plead guilty. Yet, relying upon simple resort to "fairness" risks substituting speculative anecdotalism and emotional outrage for clearly defined legal standards that can be applied by courts in the future.

We tried a nebulous "this isn't right" due process standard when we first started dealing with the systemic misconduct of lab technician Jonathan Salvador. *See Owens*, 515 S.W.3d at 896 ("These 'Salvador cases' all shared a common finding by this Court that there had been a presumptive due-process violation in each case in which Salvador was the laboratory technician."). But we abandoned that approach rather quickly in *Ex parte Coty* because the "this isn't right" standard failed to adequately address the issue of falsity and materiality. *Id*. Neither approach seems wholly satisfying, but at least the approach in *Coty* provides a workable standard and seems likely to be applied to Carrion's

"drug swapping" scheme in the future. 418 S.W.3d 597, 605 (Tex. Crim. App. 2014) (announcing five-factor test for a presumption of falsity in cases involving systemic, intentional misconduct, and requiring the applicant to prove materiality). Still, the *Coty* standard was designed to address the fallout from Jonathan Salvador's misconduct not the cases involving his intentional misconduct. This case is ground zero; it's not about the fallout.

I see how under the *Barnaby* standard the intentional misconduct in this case could have affected Applicant's decision to plea. In that sense, there seems to be room for a finding that Carrion's misconduct was "material" under *Barnaby*. But I also recognize that the United States Supreme Court has held that, in the context of an involuntary plea based upon a *Brady* claim, due process does not require disclosure of material impeachment evidence prior to a defendant pleading guilty of a crime. *United States v. Ruiz*, 536 U.S. 622, 630 (2002). It makes no sense that the failure to disclose impeachment evidence would require relief under a false-evidence claim but not under a *Brady* claim when both claims allege a violation of due process and both involve the same evidence and the same allegations of intentional misconduct.

Of course, *Ruiz* dealt with a blanket waiver of the right to notice

regarding potential impeachment evidence. To the extent that the Supreme Court considered the impact of undisclosed impeachment evidence it did so on a theoretical basis. It remains to be seen whether this standard would hold up in the face of concrete (and particularly compelling) impeachment evidence. Perhaps the egregious nature of the misconduct in this case will prompt the Supreme Court to re-evaluate *Ruiz*, particularly in light of the Court's recent acknowledgment that "criminal justice today is for the most part a system of pleas, not a system of trials." *Lafler v. Cooper*, 566 U.S. 156, 170 (2012). Or perhaps not. Nevertheless, *Ruiz* is the law today and I see no indication that it will cease to be the law tomorrow. I cannot fault the Court for applying it.

In the end, I join the result in light of *Ruiz*. We have tried holding that intentional misconduct obviates the need for a determination of materiality, but we abandoned that approach in *Coty*. Under *Ruiz*, a defendant is not constitutionally entitled to pre-plea notice of even material impeachment evidence, so it is hard to see how the subsequent discovery of such evidence would render a plea involuntary.[4] In the end,

---

[4] Under Article 39.14(h) of the Code of Criminal Procedure the State has a statutory duty to disclose any impeachment evidence. However, this case does not involve a claim that the State violated Article 39.14(h) because that statutory subsection became effective

*Ruiz* seems to make a showing of materiality immaterial so long as the evidence at issue can be characterized as impeachment evidence.  So, if the United States Supreme Court is okay with allowing a defendant to plead guilty before he is apprised of all material impeachment evidence, this Court must be okay with it too.

        With these thoughts I concur.

Filed: November 15, 2017

Do Not Publish

---

after Applicant pleaded guilty.