

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-96,385-01

### EX PARTE DENISE ELAINE MILLS, Applicant

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 1420310-A
### IN THE 177TH DISTRICT COURT FROM HARRIS COUNTY

FINLEY, J., filed a dissenting opinion, in which SCHENCK, P.J., and PARKER, J., joined.

## DISSENTING OPINION

In this instant writ of habeas corpus, Applicant raises two claims for post-conviction relief: (1) she "was denied due process when the State used material[,] false evidence to induce her guilty plea"; and (2) her "guilty plea was involuntary." Today, the Court agrees and grants Applicant post-conviction habeas relief. I would file and set this application to determine whether Applicant is entitled to post-conviction relief.

Applicant's involuntary plea claim for which the Court grants relief is premised on her being unaware of a police officer's pattern of mendacity or as the majority puts it, "bad acts." Maj. Op. at 1. But a pattern of mendacity does not render a plea involuntary. Rather, false evidence (whether proved or inferred) does, but only if such evidence was material in a defendant's decision to plead guilty. It appears that the Court mistakenly conflates a pattern of mendacity with an unrebutted inference of falsity, as discussed below.

Given this analytic gap, I believe the Court should file and set this writ application. The Court does not. Therefore, I respectfully dissent.

## I. Background

### a. The Facts from Officer Gerald Goines's Police Report[1]

On March 6, 2014, Officer Gerald Goines was undercover in an unmarked vehicle in a high-traffic drug area in Houston, Texas. Officer Goines spoke with Applicant to purchase crack cocaine, specifically "2-$10 rocks of crack cocaine." Applicant entered the unmarked vehicle and directed Officer Goines to a residence. When they arrived, Officer Goines gave Applicant $20. Applicant entered the residence alone and then returned with "one rock like substance." Even though Officer Goines sought to purchase two $10 rocks of

---

[1] The official police report's text is fully capitalized. The capitalization has been converted to lower case for ease of reading.

crack cocaine, Applicant informed him that the singular rock she gave him "was a 'twenty,'" which is a "street term for $20 of rock cocaine."

After receiving the crack cocaine, Officer Goines drove off, dropped Applicant off at a street's intersection, and gave her an additional $5 bill for assisting with the buy. As Applicant walked away, Officer Goines informed arresting officers to make an arrest. An arresting officer found "one rock like substance . . . in her right hand along with the $5 bill which was given by [Officer Goines]." Officer Goines verified that the $5 bill was the same one he gave Applicant when dropping her off. Officer Goines field tested the rock Applicant purchased for him and the one found in her hand. Both tested positive for crack cocaine, at which point Officer Goines submitted them to a narcotics lock box for evidence.

### b. The Plea

On June 25, 2014, a grand jury indicted Applicant on the felony charge of delivery of a controlled substance, specifically cocaine "weighing by aggregate weight, including any adulterants and dilutants, less than one gram." Two prior state jail felony convictions were included in the indictment as enhancements: (1) prostitution, and (2) delivery of a controlled substance.

With these prior convictions and upon conviction for this instant felony charge, Applicant was facing two to ten years' imprisonment.[2]

Less than one week later, Applicant, represented by counsel, and the State entered into a plea deal in which Applicant pleaded guilty to delivery of cocaine of less than one gram. In exchange for Applicant's plea, the State recommended 180 days confinement on the state-jail felony offense and agreed to abandon both enhancement paragraphs. The trial court granted the State's motion to abandon the enhancements and sentenced Applicant to 180 days confinement, in accordance with the plea.[3]

### c. Post-Conviction Proceedings

In March of 2019, the Harris County District Attorney's Office sent a letter to Applicant, disclosing that Officer Goines had been relieved of duty and was under criminal investigation. More than five years after receiving the letter, Applicant filed this instant application for writ of habeas corpus.

Applicant's alleges two grounds for post-conviction habeas relief: (1) she "was denied due process when the State used material[,] false evidence to induce her guilty plea"; and (2) her guilty plea was involuntary. For the first, Applicant alleges that Officer Goines's version of events, as provided in his

---

[2] TEX. PENAL CODE § 12.425(a) (West 2012); *id.* § 12.34(a).
[3] TEX. HEALTH & SAFETY CODE § 481.112 (West 2012); TEX. PENAL CODE § 12.35 (West 2012).

offense report, *see supra* Section I.a., are presumptively false, and were material to her decision to plead guilty because Officer Goines's allegations were the only evidence against her. For the second, Applicant alleges that Officer Goines's undisclosed pattern of falsifying evidence in official police reports and court documents rendered her plea involuntary because had she known of such conduct, she would have insisted on going to trial. Applicant's unsworn declaration asserts that she did not "commit this offense," "possess any drugs on March 6, 2014," and "give any drugs to Gerald Goines or anyone else."

On January 16, 2025, the habeas court adopted the State's and Applicant's agreed proposed findings of fact and conclusions of law. The habeas court recommends that this Court grant relief. The following excerpts from the adopted document are pertinent to my discussion below:

> 14. In contrast to *Coty*, the Court finds the State has not presented evidence which effectively rebuts the presumptively false evidence. *Cf. Coty*, S.W.3d at 344.

> 15. Applicant's unsworn declaration contains the following regarding Goines' pattern of false evidence: "If l had known that Goines was making up charges against other people during the same time he was lying about me, I would not have pleaded guilty. If I could somehow have shown that he was doing this to other people too, I would have insisted on a trial." (*Ex. C., Unsworn Declaration*).

16. The Court finds this portion of Applicant's unsworn statement relevant and credible considering Goines' multiple documented instances of misconduct between 2008 and 2019.

17. The Court finds Applicant's plea to be involuntary. *Barnaby*, 475 S.W.3d at 325–26.

\* \* \*

19. The Court concludes Applicant successfully demonstrates by a preponderance of the evidence that the presumptively false evidence provided by Goines in the offense report is material, and that the Applicant is entitled to habeas corpus relief. *Cf. Coty*, 432 S.W.3d at 344.

20. The Court also concludes Applicant successfully demonstrates by a preponderance of the evidence that her plea was involuntary. *Cf. Barnaby*, 475 S.W.3d at 325–26.

Today, the Court grants relief on Applicant's involuntary plea claim because she did not know of Officer Goines's bad acts when pleading guilty. *See* Maj. Op. at 1–2. In doing so, the Court relies on *Ex parte Mathews,* 638 S.W.3d 685 (Tex. Crim. App. 2022) (*Mathews I*), *Ex parte Coty*, 418 S.W.3d 597 (Tex. Crim. App. 2014), and *Brady v. United States*, 397 U.S. 742 (1970). For the reasons explained below, I do not believe Applicant is entitled to relief, at least without further analysis and explanation.

## II. Analysis

### a. *Mathews I* incorrectly conflated a pattern of mendacity with an inference of falsity.

Under most false-evidence habeas claims, an applicant must show that the State used false evidence against her and that the false evidence was

material to her conviction or punishment. *See, e.g.*, *Ex parte Weinstein*, 421 S.W.3d 656, 665 (Tex. Crim. App. 2014). Each prong of this two-pronged inquiry is distinct. *Id.* This Court will deny relief if either prong is not proven. *See id.* at 669.

In 2014, this Court recognized that in unique circumstances an applicant may establish falsity by a rebuttable inference rather than by direct evidence. *Coty*, 418 S.W.3d at 604–05. Even though *Coty* implemented a shifting burden for falsity, it held that for materiality—regardless of how falsity is proven— "the applicant must prove that the false evidence was material to his or her conviction." *Id.* at 605. So while *Coty* provided an alternative route to establish the falsity prong of false-evidence habeas claims, it did not change the fundamental requirement that the false evidence itself must be material. *Id.*; *accord Ex parte Chavez*, 371 S.W.3d 200, 208 (Tex. Crim. App. 2012) ("To constitute a due-process violation, the record must show that the testimony was material, namely, that there is 'a reasonable likelihood' that the false testimony affected the judgment of the jury." (citing *Ex parte Ghahremani*, 332 S.W.3d 470, 478 (Tex. Crim. App. 2011))).

One year later, this Court explicitly extended *Coty* to the plea-bargaining context. *Ex parte Barnaby*, 475 S.W.3d 316, 322–27 (Tex. Crim. App. 2015) (per

curiam).[4] In doing so, *Barnaby* permitted plea-bargaining habeas applicants to use *Coty*'s inference of falsity for claims involving a laboratory technician's malfeasance. *Id.* at 323–25. *Barnaby* further noted that because guilty pleas are contextually different than false testimony or evidence produced at trial, the materiality question must ask the following: "Would the defendant, knowing of the falsity of the evidence, still have plead[ed] guilty or would he have insisted on going to trial?" *See id.* at 325–26. "If he would have chosen trial, the false evidence was material." *Id.* at 326. But like *Coty*, *Barnaby* reaffirmed the basic principle that "[a]fter an applicant makes the initial showing of falsity, he must still prove that the false evidence (whether proved or inferred) was material to the decision to plead guilty." *Id.* at 323–24 (citing *Coty*, 418 S.W.3d at 606).

*Mathews I* tampered with that basic principle. 638 S.W.3d at 692. *Mathews I* extended the rebuttable inference of falsity to "cases involving police officers who display a pattern of mendacity in obtaining drug arrests and convictions." *Id.* at 690–91.[5] To obtain the rebuttable inference of falsity, an applicant must prove: (1) the officer is a state actor; (2) the officer has

---

[4] Even though *Coty* also involved a plea deal, the Court did not "did not discuss materiality in the context of a guilty plea." *Barnaby*, 475 S.W.3d at 324 n.11

[5] *Matthews I*'s underlying facts are strikingly similar and indeed also involve Officer Goines. *See* 638 S.W.3d at 687–89.

"committed multiple instances of misconduct 'in another case or cases'"; (3) the officer is "the same state actor in the current case"; (4) the officer's "previous misconduct is of a kind 'that would have affected the evidence in' [a]pplicant's case"; and (5) the officer acted "'within roughly the same period of time' that he committed his other acts of misconduct." *See id.* at 691 (citing *Coty*, 418 S.W.3d at 605). This, too, applies to pleas. *Id.* at 690–91.

While nothing previously discussed is surprising, *Mathews I*'s materiality discussion is. It began by underscoring *Barnaby*, 475 S.W.3d at 326, and *Ex parte Owens*, 515 S.W.3d 891, 898 (Tex. Crim. App. 2017), as examples of situations in which the challenged plea was held voluntary, even in light of false evidence, because the applicant failed to prove materiality. *Mathews I*, 638 S.W.3d at 691; *see also Barnaby*, 475 S.W.3d at 326; *Owens*, 515 S.W.3d at 898. This is no surprise because a successful false-evidence involuntary plea claim must satisfy two prongs: (1) false evidence, and (2) materiality. But then *Mathews I* stumbled. It considered the officer's "history of falsification" in determining whether materiality was satisfied—rather than considering the unrebutted, inferentially false evidence at issue that was analyzed previously in the opinion's section entitled "Applying the *Coty* Factors." *Mathews*, 638 S.W.3d at 691–92 (noting that applicant "insist[ed] that he would not have taken th[e] deal had he known of Goines's history of

falsification beforehand"). *Mathews I* did not consider whether unrebutted, inferentially false evidence induced the applicant's guilty plea as required by *Barnaby*. *Mathews I*, 638 S.W.3d at 692. Instead, *Mathews I* allowed the applicant to, on remand, establish the inference of falsity and then swap it out for the officer's "pattern of mendacity" to establish materiality. *Id.* at 691.

But the "pattern of mendacity" in *Mathews I* is simply the police officer version of "the extent of the pattern of misconduct the technician is accused of" in *Coty*. *Compare id.* at 690 (stating that *Coty*'s five-factor test applies "to cases involving police officers who display a pattern of mendacity in obtaining drug arrests and convictions"), *with Barnaby*, 475 S.W.3d at 323 (stating that *Coty*'s five-factor test was needed for situations in which "a laboratory technician has demonstrated a pattern of misconduct" (citing *Coty*, 418 S.W.3d at 606)). *Mathews I* failed to differentiate the two. It mistakenly conflated the false evidence inference and a pattern of mendacity when articulating the materiality prong of false-evidence involuntary plea claims. Thus, *Mathews I* allowed something that is not false evidence to potentially invalidate a plea.

The Court should file and set this writ application to correct this mistake.

### b. Is a pattern of mendacity a distinct, functional equivalent of false evidence?

If a pattern of mendacity is a distinct but functional equivalent of false evidence, thereby becoming a meritorious ground for a false-evidence involuntary-plea claim, then the Court should explain why.[6]

At the outset, I am reluctant to believe that a pattern of mendacity should be treated like false evidence because mendacity's scope is used to limit the inference of falsity. *Coty*, 418 S.W.3d at 605 & n.11. While mendacity is certainly probative of the degree to which we believe that false evidence infected an applicant's conviction or plea, it is nevertheless a separate concept. *See id.*

As mendacity relates to materiality, I do not think that had Applicant known of Officer Goines's pattern of mendacity, she would have proceeded to trial. *See Barnaby*, 475 S.W.3d at 325–26; *id.* at 323 ("The voluntariness of a plea 'can be determined only by considering all of the relevant circumstances surrounding it.'" (quoting *Brady*, 397 U.S. at 749)). The grand jury indictment alleged that Applicant delivered cocaine to Officer Goines on March 6, 2014. So too did Applicant's stipulation and judicial confession. Officer Goines's "unknown" or "undisclosed" pattern of mendacity is unrelated to Applicant's

---

[6] As an aside, I am unsure whether the State even had a duty to disclose a pattern of mendacity. *See United States v. Ruiz*, 536 U.S. 622, 629 (2002).

decision to plead guilty because at the time of her plea only one of two mutually exclusive situations could be true: (1) Applicant did not deliver cocaine to Officer Goines, so Applicant knew that Officer Goines was lying; or (2) Applicant did deliver cocaine to Officer Goines, so Officer Goines was truthful. Officer Goines's pattern of mendacity is not implicated in the latter. For the former, Officer Goines's pattern of mendacity—specifically, fabricating charges, and falsifying official police records and court documents—was known by Applicant at the time she pleaded guilty because Officer Goines's falsehoods were before her, in writing. And yet, Applicant pleaded anyways.

Moreover, while Officer Goines was the only witness, other than Applicant, to the purported drug transaction, an arresting officer found crack cocaine in Applicant's hand and the $5 bill that Officer Goines allegedly gave to Applicant. These two facts would tend to weigh against materiality because they serve as additional, circumstantial evidence that Officer Goines's police report was not the only evidence against Applicant. The other crack rock may also rebut the inference of falsity because it substantiates the truthfulness of Officer Goines's report. Namely, Officer Goines provided Applicant with $20 to purchase two crack rocks. After the drug buy, Applicant gave Officer Goines one rock under the guise that it was individually worth $20. And yet, when Applicant was arrested, the officer found a crack rock in her hand. It does not

take a sleuth to conclude that Applicant could have, in fact, purchased two rocks according to her initial deal with Officer Goines and then decided to keep one for herself. The arresting officer who found the rock, to the Court's knowledge, has not engaged in misconduct, and Applicant did not contend that anyone planted that rock on her person. Applicant's application is curiously silent as to this mysterious second rock.

Alternatively, maybe the Court means to say false evidence whenever it uses the term pattern of mendacity. If this is the case, then the Court should clarify as such because our jurisprudence indicates otherwise.

But again, I am uncertain whether Applicant would be entitled to relief even if such clarification is warranted. If the Court means to say false evidence when it uses the term pattern of mendacity, then Officer Goines's pattern of mendacity would actually mean his underlying police report (i.e., the allegedly false evidence). Yet an officer's report is not admissible evidence. TEX. R. EVID. 803(8). Before *Mathews I*, false evidence claims seemed to be restricted to false admissible evidence. *See, e.g.*, *Barnaby*, 475 S.W.3d at 319–20 (lab report); *Coty*, 418 S.W.3d at 598–602 (lab report); *Ghahremani*, 332 S.W.3d at 476–77 (trial testimony). Assuming that a police report falls under the umbrella of false evidence claims, at the time of her plea, Applicant knew whether or not Officer Goines was lying.

Applicant alleges that Officer Goines's version of facts in the offense report was the only evidence to support her conviction. Taken at face value, this indicates that Applicant would have known about the misrepresentation and pleaded anyways, thereby knowingly and voluntarily entering the plea. The habeas court did not inquire into why Applicant accepted the plea under these circumstances, so it is unknown. But "the question of whether the value of the undisclosed information . . . was outweighed by the benefit of accepting the plea offer" is one of the relevant facts and circumstances that should be considered during the materiality analysis. *Barnaby*, 475 S.W.3d at 325–27; *see also id.* at 326 n.19 ("Applicant had a clear incentive to plead guilty in this case, despite his professed belief in his innocence." (citing *North Carolina v. Alford*, 400 U.S. 25, 38 (1970))). For Applicant, the value of the undisclosed information is zero; either Officer Goines's statements were true, or Applicant knew they were false before she accepted the plea. This inquiry is relevant and may result in Applicant failing to establish materiality, yet it received no consideration.

c. **When the only instances of proven misconduct are separated by ten years, does it make sense to infer falsity for every Goines-related case that falls within this ten-year window?**

Of the five factors required to infer falsity, factors two and five have a temporal aspect. *Coty*, 418 S.W.3d at 605; *Mathews I*, 638 S.W.3d at 691. While

the second factor requires proof of other instances of intentional misconduct, the fifth factor requires proof that the currently alleged instance of misconduct occurred "within roughly the same time" as the previously proven, not inferred, instances of misconduct. *See Mathews I*, 638 S.W.3d at 691. In essence, these factors create a permissible "window in time," and if the currently alleged instance of misconduct falls within that window, the Court will presumptively infer that the evidence in question is false. *See id.*; *see also Ex parte Mathews*, 666 S.W.3d 475, 476 (Tex. Crim. App. 2023) (*Mathews II*). But in doing so, the Court opened the floodgates for any post-conviction writs that mention Officer Goines.

In *Mathews II*, there were two instances of proven misconduct—one in 2008 and another in 2018. 666 S.W.3d at 476. The alleged instance of misconduct occurred in 2013. *Id.* Even though it happened five years before and after the only instances of proven misconduct, the Court concluded that it "occurred within roughly the same period of time as the other misconduct." *Id.* Thus, the Court effectively created a ten-year window in which any evidence handled by Officer Goines is inferred as false. *See id.*

This ten-year window is too liberal of an application of *Coty*, which was fashioned only because the Court realized that is inappropriate "to presume error and materiality in every case" involving bad actors, such as Officer

Goines. 418 S.W.3d at 606. Now the Court effectively presumes error in any case involving Officer Goines that falls within 2008 and 2018.

Applicants are now able to engage in inference stacking. Instead of proving actual instances of intentional misconduct, besides what this Court has previously recognized regarding the separate instances in 2008 and 2018, applicants can rely on instances in which this Court has inferred false evidence. In the habeas court's findings of fact and conclusions of law, for example, the court concluded that "Goines has been found to have provided false evidence in the following cases, on the dates indicated, all of which have resulted in the Court of Criminal Appeals Granting relief[.]" The habeas court cited an astonishingly high number of cases: twenty-nine. For reference, the following were cited:

- *Ex parte Otis Mallet Jr.*, Nos. WR-90,980-01 & WR-90,980-02, 2020 WL 3582438 (Tex. Crim. App. July 1, 2020);
- *Ex parte Steven Mallet*, 620 S.W.3d 797 (Tex. Crim. App. 2021);
- *Ex parte Derek Hams*, No. WR-94,870-01 (Tex. Crim. App. April 24, 2024);
- *Ex parte Byron Prophet*, No. WR-95,386-02 (Tex. Crim. App. August 21, 2024);
- *Ex parte Jeffrey Vance,* No. WR-32316-02 (Tex. Crim. App, June 19. 2024);
- *Ex parte Lisa Brown*, No. WR-93,640-01 (Tex. Crim. App. May 3, 2023);
- *Ex parte Andre Rashad Dillard*, No. WR-94,879-01 (Tex. Crim. App. August 23, 2023);
- *Ex parte Doris Martin*, No. WR-95,686-01/02 (Tex. Crim. App. August 21, 2024);
- *Ex parte Chris Dewayne Flowers*, No. WR-94,786-01 (Tex. Crim. App. June 7, 2023);

- *Ex parte Corey Johnson*, No. WR-95,268-01 (Tex. Crim. App. December 20, 2023);
- *Ex parte Roderick Bell,* No. WR-95,159 01 (Tex. Crim. App. December 6, 2023);
- *Ex parte Terrance Spriggs*, No. WR-94,947-01 (Tex. Crim. App. September 13, 2023);
- *Ex parte Melvin Mitchell,* No. WR-95,393-01 (Tex. Crim. App. April 17, 2024);
- *Ex parte Cedric Woods*, No. WR-94,858-01 (Tex. Crim. App. August 23, 2023);
- *Ex parte Sharay Thomas*, No. WR-95,674-01 (Tex. Crim. App. June 19, 2024);
- *Ex parte Joyce Coby*, No. WR-95,132-01 (Tex. Crim. App. November 15, 2023);
- *Ex parte Aaron Mathews*, No. WR-91,731-01, 2023WL 151296 (Tex. Crim. App. January 11, 2023);
- *Ex parte Bobby Lee Garnous*, No. WR-94,841-01 (Tex. Crim. App. December 6, 2023);
- *Ex parte Damian McGinnis*, No. WR-95,123-01 (Tex. Crim. App. October 5, 2023);
- *Ex parte James Ybarra*, No. WR-95,148-01 (Tex. Crim. App. January 10, 2024);
- *Ex parte Michael Gastille*, No. WR-95,535-01, 2024 WL1295816 (Tex. Crim. App. March 27, 2024);
- *Ex parte Macarthur Ross*, No. WR-95,087-01 (Tex. Crim. App. September 27, 2023);
- *Ex parte Harry Gradney*, No. WR-95,160-01 (Tex. Crim. App. October 18, 2023);
- *Ex parte Dequentun Mitchell*, No. WR-95,208-01 (Tex. Crim. App. December 13, 2023);
- *Ex parte Shanta Renchie*, No. WR-94,940-01 (Tex. Crim. App. August 23, 2023);
- *Ex parte Tony Vaughn*, No. WR-92,339-01, 2023 WL 152256 (Tex. Crim. App. January 11, 2023);
- *Ex parte Kattina Barley*, No. WR-95,818-02, 2024 WL 4033579 (Tex. Crim. App. September 4, 2024);
- *Ex parte Frederick Jeffrey*, No. WR-92,544-01, 2022 WL 4088689 (Tex. Crim. App. September 7, 2022); and
- *Ex parte Tyrik Guy*, No. WR-95,476-01 (Tex. Crim. App. February 28, 2024).

Yet this Court has actually concluded that Officer Goines provided false evidence in only three of those cases, not all twenty-nine: *Otis Mallet Jr.*, *Steven Mallet*, and *Jeffrey*. Thus, in almost 90% of the cases relied upon by the habeas court and in which this Court has granted relief, this Court inferred false evidence without actually finding that Officer Goines engaged in misconduct. By repeatedly permitting applicants to obtain post-conviction relief under these circumstances, the Court has diluted *Coty*. Applicants now have free-standing false evidence relief without ever having to prove that the alleged misconduct in question occurred in close proximity to a previously proven instance of misconduct.

Inference stacking allows applicants to artificially close the temporal gap by falsely equating previous presumptive inferences of false evidence with previous, proven instances of actual misconduct. Permitting inference stacking also alleviates an applicant's need to prove multiple instances of similar misconduct. This disregards how "it is incumbent upon the applicant to establish the extent of the pattern of misconduct the [state actor] is accused of." *Coty*, 418 S.W.3d at 605. Rather than making this showing, inference stacking permits and encourages applicants to "establish" a pattern of what is supposed to be actual misconduct by relying upon inferred, unproven instances of misconduct. But unproven instances of misconduct establish nothing. They

establish that this Court inferred false evidence in previous situations. That inference is unrelated to whether the state actor in question actually committed multiple instances of misconduct. In fact, judicial notice of prior inferences establishes the exact opposite—previously inferred false evidence claims establish that there was insufficient evidence of misconduct in that prior writ. How could insufficient evidence of misconduct in one writ serve as competent, sufficient evidence of misconduct in another? It cannot. Inferred, unproven instances of misconduct cannot satisfy any of the *Coty* factors. And yet, that is precisely what inference stacking does—unproven misconduct magically becomes proven, thereby creating innumerable instances of misconduct when there are none.

The Court should file and set this writ application to determine whether inference stacking is permissible, and the requisite temporal proximity between previously proven instances of misconduct and the alleged misconduct at issue. *See Mathews I*, 638 S.W.3d at 691 (noting that five years alone is likely too much).

### d. Should someone who commits perjury during the heart of the plea process be rewarded with post-conviction habeas relief because they allege that there is a possibility of false evidence?

Applicant presents this Court with two contradictory statements: her 2014 plea, and her unsworn declaration. To circumvent their mutual

exclusivity, Applicant asks the Court to disregard her prior, sworn admission and to believe her unsworn declaration that conveniently provides her with post-conviction relief. The Court does. Why?

The Court has yet to squarely address the issue of why someone who may have lied when pleading guilty should be allowed to collaterally attack their plea under the guise that it was involuntarily entered into due to the State's use of false evidence. But we have come close. In *Ex parte Tuley*, this Court filed and set a writ application to determine whether an actual innocence claim under *Ex parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1996), is cognizable on habeas review when an applicant pleads guilty. 109 S.W.3d 388, 390 (Tex. Crim. App. 2002). The Court held that it is. *Id.*

To reach its conclusion, *Tuley* had to determine whether or not granting such relief would reward and encourage perjury. *Id.* at 391, 393. *Tuley* dismissed these concerns because they "ignore[d] the realities of pursuing a bare innocence claim" and "[a] defendant would have to assume that new evidence that affirmatively shows his innocence will appear from nowhere." *Id.* Thus, the crux of the Court's reasoning appears to rest upon *Elizondo*'s "Herculean" burden, *Ex parte Brown*, 205 S.W.3d 538, 545 (Tex. Crim. App. 2006), that requires an applicant to establish "*by clear and convincing evidence that no reasonable juror would have convicted him in light of the new*

evidence," *Elizondo*, 947 S.W.2d at 209 (original emphasis). Those considerations are unlike Applicant's.

In a scenario like *Tuley*, the perjury concerns are outweighed by the simple fact that a *Tuley* applicant is relying on *Elizondo* for relief. *See Tuley*, 109 S.W.3d at 389–90, 393 & n.2. An innocent applicant under *Elizondo* "unquestionably shows that he did not commit the offense for which he is incarcerated." *Id.* at 392. This undermines the entire purpose of the underlying criminal proceeding because unless the perjury is disregarded, an individual who has demonstrated their actual innocence would remain incarcerated. *See id.* at 392 ("The purpose of criminal proceedings is to separate the guilty from the innocent." (citing *Herrera v. Collins*, 506 U.S. 390, 398 (1993))). But those concerns are absent here, as Applicant neither claims nor demonstrates that she is entitled to relief under *Elizondo*. *See id.* at 392 ("There is nothing equitable about permitting an innocent person to remain in prison when he produces new evidence that unquestionably shows that he did not commit the offense for which he is incarcerated."). It is unclear why *Elizondo*'s considerations should be imported here and prohibit the Court from considering the relevance of perjury. Simply put, the *Tuley–Elizondo* logic does not easily extend.

By pleading guilty, Applicant received the benefit of her bargain because she was only sentenced to 180 days in the state jail, and the State abandoned two enhancement paragraphs.[7] Yet now, Applicant attempts to renege. In doing so and at some point, Applicant affirmatively lied to the State, the trial court, and presumably defense counsel. Applicant effectively created the underlying basis of her writ application because at the time she pleaded guilty, she knew whether Officer Goines lied in his report. It seems inappropriate to allow someone like Applicant to collaterally attack their plea when they both intentionally lied and failed to demonstrate relief under *Elizondo*.

Again, I would file and set this writ application to discuss these concerns.

## III. Conclusion

I am unsure whether Applicant is entitled to relief under our false-evidence involuntary-plea habeas jurisprudence. Moreover, I am skeptical of continually permitting writ applicants to use inference stacking to satisfy *Coty*'s five-factor test as applied in *Mathews I*. I believe the Court should file

---

[7] It is unclear from the habeas record, but after Applicant's arrest and according to Officer Goines's offense report, she was charged with both delivery and possession of a controlled substance, "bond was set at $15,000[] for each case," and each case had distinct cause numbers. The possession charge does not appear in Applicant's criminal history report. The State very well may have dropped that charge and only pursued the delivery offense with an understanding that Applicant would plead to the delivery offense.

and set this application to clarify *Mathews I* and explain why Applicant is entitled to relief. Because the Court does not, I respectfully dissent.

Filed: March 26, 2025
Publish